**Reversed and rendered in part, Affirmed in Part, and Majority and Dissenting Memorandum Opinions filed August 8, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00094-CV

---

**M.A.R., Appellant**

**V.**

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee**

---

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-01122J**

---

## MEMORANDUM OPINION

This accelerated appeal arises from a final order in which, after a final hearing tried to the bench,[1] the trial court terminated the parental rights of appellant M.A.R. (Father) with respect to his daughters A.R. (Anna) and B.R. (Bea),[2] who

---

[1] We refer to the final hearing as the "trial."

[2] To protect the minor's identity, we have not used the actual names of the child, parents, or other family members. *See* Tex. R. App. P. 9.8. We refer to Anna and Bea collectively as "the girls."

were three-years old and two-years old respectively at the time of trial, and appointed appellee Department of Family and Protective Services (the Department) to be the girls' sole permanent managing conservator. *See* Tex. Fam. Code Ann. § 109.002(a-1) (accelerated appeals in parental-termination cases); Tex. R. App. P. 28.4 (same).[3]

In issue one, Father challenges the sufficiency[4] of the evidence to support the trial court's findings on the predicate grounds of endangerment pursuant to subsection D and E. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). In issue two, Father challenges the sufficiency of the evidence to support the trial court's finding that termination is in the best interest of Bea.[5] *See* Tex. Fam. Code Ann. § 161.001(b)(2). Father does not challenge the trial court's finding on the predicate grounds for termination under subsection O or N.

We agree with Father that the evidence does not support the trial court's findings on the predicate grounds of endangerment pursuant to subsection D and E, reverse the order of the trial court in part, and render the judgment the trial court should have rendered, striking the subsection D and E findings. We further conclude the trial court did not err in finding that termination was in the best interest of the girls. Because Father did not challenge termination of his parental rights pursuant to subsection O and N, we affirm the remainder of the order.

---

[3] The girls' mother K.M. (Mother) signed an affidavit voluntarily relinquishing her parental rights to Anna and Bea. *See* Tex. Fam. Code Ann. § 161.103. The trial court terminated Mother's parental rights on that basis, and Mother does not appeal.

[4] While Father did not file a motion for new trial, "[i]n a civil nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." Tex. R. App. P. 33.1(d).

[5] Father does not challenge on appeal the trial court's termination of his parental rights as the alleged father of Anna. As discussed below, Father never legally acknowledged paternity of Anna, filed a counterclaim for paternity or submitted to DNA testing (as ordered by the Department). Therefore, we only discuss his legal- and factual-sufficiency challenge as to his parental rights over Bea.

# I.    BACKGROUND

Anna was born in August 2019 and Bea was born in September 2020. The girls came into the care of the Department in July 2021 when Mother was found unconscious or asleep in her vehicle at a gas station with the girls in the back seat. An employee called the police after Mother had been asleep in her vehicle for an hour. Mother was arrested after alcohol and marijuana were found in the vehicle and she failed a field-sobriety test.[6] Father was called to pick up the girls, which he did. Mother and Father had ended their relationship by this time and were living separately. The next day, after Mother posted bond and returned home, Father returned the girls to Mother.

A Child Protective Services (CPS) investigator followed up with Mother after her release and ultimately the Department sought and received temporary conservatorship over the girls.

The trial on termination of Father's parental rights was held in November 2022, and the trial court terminated Father's parental rights to Bea pursuant to Family Code subsections 161.001(D), (E), (N) and (O). The trial court also found termination was in Bea's best interest. Because Father had not acknowledged Anna as his child nor had he initiated a counterclaim for paternity, the trial court terminated any parental relationship between Father and Anna.[7] Tex. Fam. Code Ann. § 161.002(b)(1) (rights of alleged father may be terminated if after being served with citation, alleged father does not respond by timely filing an admission of paternity or a counterclaim for paternity).

---

[6] Mother was later charged with and pleaded guilty to driving while under the influence with a child under 15 years of age.

[7] Father signed an Acknowledgement of Paternity of Bea in September 2020. The trial court signed an order establishing Father as the parent of Bea in January 2022.

3

## A.  Documentary evidence

### 1.  First Amended Temporary Order

Following the July 2021 adversary hearing (as updated in July 2022 with Anna's correct birth date), the trial court found there was an immediate danger to the girls' physical health or safety. As a result of these findings, the trial court named the Department as the temporary sole managing conservator of the child with rights to physical possession of the child until a full adversary hearing was held.

### 2.  Family-plan evaluation

According to the Department's family-plan evaluation (the services plan) first drafted in August 2021, which was admitted into evidence at trial, the goal was to ensure the girls lived in a safe and stable environment with a caregiver that could protect them from harm and danger. With respect to Father, the family-plan evaluation stated that Father was not to "allow his children to return to the conditions or surroundings which endangered the physical or emotional well-being" of the girls.

The plan outlined the required actions for Father including the following:

a. obtain and maintain stable employment (including providing proof of employment to the Department);
b. notify the caseworker of any changes to his address or telephone number;
c. provide lease documents to the Department and maintain stable housing;
d. participate in court hearing, conferences with the Department and family visits;
e. sign release of confidential information;
f. abstain from engaging in criminal conduct;
g. successfully complete a parenting class;

4

> h. maintain minimum monthly contact with the caseworker;
>
> i. complete random drug and alcohol testing;
>
> j. participate in a drug/alcohol assessment and follow all recommendations; and
>
> k. participate in a psychological assessment and address any emotional or mental needs.

### 3. Father's drug testing history

Records were admitted at trial establishing that Father failed to appear for drug testing in July and September 2021.[8] In January 2022, Father submitted to testing and tested positive for marijuana and its metabolites. Father did not submit for testing as ordered in May 2022 or thereafter.

### 4. Father's criminal record

The following judgments of conviction representing Father's criminal history were admitted as evidence at trial:

- (1) Theft of $50 or more but less than $500; 30 days in county jail. No. 2006363 (Cnty. Crim. Ct. at Law No. 6, Harris Cnty., Tex. Jan. 29, 2015).

- (2) Possession of marijuana two ounces or less; 30 days in county jail (ran concurrently with the sentence (1)). No. 2006365 (Cnty. Crim. Ct. at Law No. 6, Harris Cnty., Tex. Jan. 29, 2015).

- (3) Burglary of vehicle; 300 days in county jail. No. 2037794 (Cnty. Crim. Ct. at Law No. 15, Harris Cnty., Tex. July 30, 2015).

- (4) Credit/debit card abuse; 180 days in state jail (ran concurrently with sentence (3)). No. 1476888 (228th Dist. Ct., Harris Cnty., Tex. Oct. 6, 2015).

- (5) Theft of firearm; 180 days in state jail (ran concurrently with sentences (3) and (4)). No. 1479245 (228th Dist. Ct., Harris Cnty., Tex. Oct. 6, 2015).

---

[8] The Permanency Report to the Court, admitted into evidence, references other positive drug tests for marijuana and alcohol that were not included as trial exhibits.

- (6) Possession of marijuana four ounces or less but more than two ounces; 90 days in county jail. No. 2093014 (Cnty. Crim. Ct. at Law No. 15, Harris Cnty., Tex. June 17, 2015).

- (7) Evading arrest; 90 days in county jail (ran concurrently with sentence (6)). No. 2093015 (Cnty. Crim. Ct. at Law No. 15, Harris Cnty., Tex. June 17, 2015).

- (8) Unauthorized use of vehicle; 180 days in county jail (ran concurrently with sentence (7)). No 1513563 (183rd Dist. Ct., Harris Cnty., Tex. Dec. 14, 2016).

- (9) Assault causing bodily injury; 200 days in county jail. No. 1601680 (208th Dist. Ct., Harris Cnty., Tex. Sept. 4, 2018).

Father was charged with assault of a family member as a result of allegations by Mother in April 2020, but those charges were dismissed at Mother's request. Father was also charged with assault of a security officer in April 2020, but the charges were dropped by the State after Father completed an anger management course.

### 5. Permanency report to the court

The report submitted to the court in October 2022 reflected that Father was in contact with the Department, but was not in compliance with most of his required services and had missed two visits with the girls in June 2022.

Although Father completed his substance-abuse assessment and counseling program, he was not in compliance with the post-discharge plan. Father was discharged from the psychological evaluation due to non-compliance and repeated failure to attend his appointments. Following his psychological assessment, the report notes that Father would benefit from therapy to work on his anger-management issues.

### B. Trial testimony

Father did not appear or testify at trial. However, testimony was received

from the following witnesses.

### 1. CPS Supervisor

Child Protective Services (CPS) supervisor S. Khan testified that Father was served but had not acknowledged paternity of Anna and refused to submit to DNA testing to determine paternity.

The CPS supervisor testified that the girls came into the care of the Department after Mother was found in her car unconscious, due to intoxication, with the girls inside. Father was called to come and get the girls. The supervisor testified based on documentation from a prior caseworker that (1) Father had the girls for one day, (2) Father was aware of Mother's intoxication yet returned the girls back to the care of Mother, and (3) Father was unwilling to serve as a long-term caregiver and had no place for the girls to live. On cross-examination, the supervisor admitted that Father also described to the caseworker that Mother threatened Father with kidnapping charges if he did not return the girls.

The supervisor testified that Father did not complete his services plan. Father had not submitted to the required drug testing, had not followed the recommendations of the current substance-abuse-treatment program, had missed a significant number of visits with the girls, had not participated in counseling, and had not provided any proof of residence or employment.

The supervisor testified that Father has been very argumentative with her and difficult to deal with. She stopped communicating with Father in person or over the phone because of his behavior. She only communicates with Father through email and copies his attorney. The caseworker testified that Father endangered the children by returning to them Mother after her arrest.

The supervisor testified that when she became involved with the girls' case

in May 2022, Father was not showing up to his in-person visits. The trial court then changed visitation to videoconference contact only. The supervisor testified that Father had missed three of five virtual visits.

Although the supervisor testified to concerns of domestic violence between Mother and Father, the services plan for Father did not address any such concerns or make recommendations for addressing such concerns. The supervisor was aware that Father had tested positive for marijuana and alcohol during the pendency of the case. However, she had no knowledge of whether the girls had ever been affected by his drug usage.

The supervisor testified that one of Mother's cousins was interested in fostering and adopting the girls. Though she had not personally observed their interaction, the caseworker had reported to her that the girls were responding well to Mother's cousin. At the time of the trial, the girls were staying with Mother's cousin as part of a longer transition visit.

### 2. Child Advocates coordinator

Child Advocates coordinator G. Subuh testified at trial that she agreed with the Department's recommendation to terminate Father's parental rights to the girls. A volunteer with Child Advocates previously went over the services plan with Father and made attempts to contact him. The Child Advocates coordinator testified that Father was presently not able to meet the girls' needs. The Child Advocates coordinator also agreed with the Department that no concerns existed with placing the girls with Mother's cousin, and that it was in the best interest of the girls to place them with her.

### 3. CPS caseworker

CPS caseworker P. Boatner had only been assigned to the case a few months

8

before the trial. However, the caseworker observed Father's virtual visits with the girls and testified that the interaction between Father and the girls was appropriate. The girls recognized Father, and Father exchanged "I love yous" with the girls at the end of the visits.

## II.   ANALYSIS

### A.   Standards of review

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."). Given the fundamental liberty interests at stake, "termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 20.

Due to the severity and permanency of terminating the parental relationship, the law in Texas requires clear-and-convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *J.F.C.*, 96 S.W.3d at 264.

The heightened burden of proof in termination cases results in a heightened standard of review. *See J.F.C.*, 96 S.W.3d at 266–67. We review the legal

sufficiency of the evidence by considering all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *Id.* at 266. We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence a reasonable factfinder could have disbelieved or found incredible. *Id.* However, this does not compel us to disregard all evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266. Because of the heightened standard, we are also mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## B. Predicate termination grounds

The trial court made predicate termination findings that Father had committed acts establishing the grounds set out in subsections D, E, N, and O of section 161.001(b)(1), which provides for termination of parental rights if the factfinder finds by clear-and-convincing evidence that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . .

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months; [or]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Father does not challenge the sufficiency of the evidence supporting predicate termination grounds of subsection (N) and (O).

Due process requires, however, that when a parent has raised the issue of insufficiency of the evidence to support the trial court's findings under Family Code section 161.001(b)(1)(D) or (E), an appellate court must address those endangerment findings to ensure a meaningful appeal due to the collateral consequences of a finding under those subsections. *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). Due-process and due-course-of-law requirements also mandate that an appellate court detail its analysis for an appeal of termination of parental rights under Family Code section 161.001(b)(1)(D) or (E). *Id.* Accordingly, we proceed to the trial court's endangerment findings under section 161.001(b)(1)(D) and (E). *See* Tex. Fam. Code Ann. § 161.001(b)(1).

### 1. Endangerment under subsection D

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Endangerment under subsection D is established by evidence related to the child's "conditions or surroundings." Tex. Fam. Code Ann. § 161.001(b)(1)(D). Analysis of the child's conditions or surroundings may include evidence of the acceptability of living conditions, parental conduct in the home, and other issues concerning the child's environment. *See S.R.*, 452 S.W.3d at 360. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *See id.* Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D. *See id.* In evaluating endangerment under subsection D, we consider the child's environment before the Department obtained custody of the child. *Id.*

The primary reason repeatedly given to the trial court for terminating Father's parental rights was because Father returned the girls to Mother's care after she posted bond for her intoxication offense. However, the Department never established that returning the girls to Mother was dangerous in and of itself. The Department did not establish Father's knowledge that Mother regularly engaged in behavior hazardous to the welfare of the girls. The Department did not establish that Father was aware that Mother was not able to meet the needs of the girls or that she would endanger the girls. There was no evidence at trial as to the living conditions of Mother's home. There was not also no evidence at trial establishing an endangering pattern of conduct by Mother.

All the Department established is that Father knew that Mother was intoxicated with the girls in the car and then returned the girls to Mother after she posted bond. Although the CPS supervisor testified that Father should have contacted CPS or taken some other action, the Department did not develop the record sufficiently to support termination on the basis that Father endangered the girls by returning them to Mother's care. This evidence is not legally sufficient to satisfy the heightened burden of proof required in termination cases. *See J.F.C.*, 96 S.W.3d at 266–67. Having determined the evidence was not legally sufficient to support termination based on subsection D grounds, we need not consider whether the evidence was factually sufficient to support termination.

## 2. Endangerment under subsection E

A finding of endangerment under subsection E requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failure to act. *S.R.*, 452 S.W.3d at 360. Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id*. "While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone." *Id*. at 360 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

A court may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re V.A.*, 598 S.W.3d 317, 331 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). "Because the inquiry under both subsections D and E includes the conduct of the parent, evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent

13

engaged in a course of conduct that endangered the well-being of the child." *S.R.*, 452 S.W.3d at 360–61. Imprisonment alone is not an endangering course of conduct but is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533–34. A parent's past endangering conduct may create an inference that the past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *See S.R.*, 452 S.W.3d at 367; *In re M.T.R.*, 579 S.W.3d 548, 568 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("Routinely subjecting a child to the probability he will be left alone because his parent is in jail endangers the child's physical and emotional well-being."). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Father argues there was legally and factually insufficient evidence to support a finding under subsection (E). Father points out that he has no arrests since 2020 and no convictions since 2018. He acknowledges that he tested positive for marijuana during the pendency of the CPS case. However, he argues there was no evidence at trial establishing a causal link between his marijuana use and endangerment of the children. Finally, Father admits that he was arrested for family violence charges against Mother. However, those charges were dismissed, and Father argues that he and Mother are no longer in a relationship and no longer live together. Father also acknowledges his prior assault conviction but maintains that it does not rise to the level of evidence establishing endangering conduct.

The Department did not introduce clear-and-convincing evidence that Father engaged in conduct that endangered the physical or emotional well-being of the girls. Although Father did test positive for marijuana during the pendency of the case (and had convictions for possession of marijuana in the past), there was no

14

evidence that Father used the substance when was caring for the children or that there was causal link between his usage of marijuana and any alleged endangerment. *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (en banc) ("A plain language reading of the statute requires a causal connection between Mother's drug use and the alleged endangerment.") (discussing Tex. Fam. Code Ann. § 161.001(b)(1)(P)(i), (11)). Father did have a criminal record; however, Father had no convictions since the girls were born and Father's convictions were all nonviolent with exception of a single assault conviction. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) ("A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment.").

Although the CPS supervisor was concerned about or suspected domestic violence between Mother and Father, there was no evidence in the record substantiating this concern. The speculation of the CPS caseworker is not evidence of domestic violence on which we can support a termination finding. Evidence that Mother on one occasion made charges of domestic violence against Father, that she later recanted, does not provide clear-and-convincing evidence of endangering conduct on Father's part. Although Mother testified at trial, she did not testify to her relationship with Father or his interactions with the girls. In sum, we agree with Father that the evidence is not legally sufficient to support a finding of endangerment under subsection E. Having determined the evidence was not legally sufficient to support termination based on subsection E grounds, we need not consider whether the evidence was factually sufficient to support termination.

Accordingly, we sustain issue 1. However, as there is at least one predicate ground for termination unchallenged on appeal, we proceed to Father's challenge

that the trial court's finding that termination of his parental rights was in Bea's best interest was not supported by sufficient evidence. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2).

## C. Best interest of the child

### 1. Legal standard

Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of Bea. *See* Tex. Fam. Code Ann. § 161.001(b)(2). There is a strong presumption that the best interest of a child is served by keeping the child with a natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code Ann. § 153.131(b)). However, prompt and permanent placement of children in a safe environment is also presumed to be in the children's best interest. Tex. Fam. Code Ann. § 263.307(a). The considerations the factfinder may use to determine the best interest of the children, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future physical and emotional danger to the child;

(4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in promoting the best interest of the children;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam.

16

Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment"). A best-interest finding does not require proof of any unique set of factors or limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

In reviewing the legal and factual sufficiency of the evidence to support the trial court's finding on best interest, we are mindful the focus in a best-interest analysis is not only on the parent's acts or omissions, but also on the nature of the relationship the children have with the parent. *See In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012).

### 2. Sufficiency of the evidence

### a. Desires of the child

Bea was removed from Mother when she was approximately a year old and Father stopped living with the girls some time before the removal, although the record does not reflect how long. When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster parents, are well-cared-for by the foster parents, and have spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A child's need for permanence through the establishment of a "stable, permanent home" has sometimes been recognized as the paramount consideration in a best-interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement is relevant to the best-interest determination. *See C.H.*, 89 S.W.3d at 28.

Here, the evidence reflects Bea and her sister had been placed with Mother's cousin and Bea was doing well, with no special medical needs. Although the girls had only visited with Mother's cousin twice before the termination hearing, the

reports to the court were that Mother's cousin could provide a positive, long-term, and well-suited environment in which the girls could be raised together. The CPS caseworker testified at trial that Bea appeared to know Father and have a bond with him during the visits she supervised. Given the age of the girls, the lack of familiarity with Mother's cousin, and the apparent bond with Father, this factor is neutral.

### b. Physical and emotional needs of the child

Evidence of a parent's unstable lifestyle can support a factfinder's conclusion that termination of parental rights is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *See In re G.M.G.*, 444 S.W.3d 46, 59–60 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (parent's failure to provide stable home and provide for child's needs may contribute to finding that termination of parental rights is in child's best interest).

The record reflects that at the time of trial Father either had not secured employment or refused to provide that information to the caseworker. He also had not provided proof of stable housing and previously told the case worker that he had no stable, long-term housing. Given that Father returned the girls to Mother, in part, due to the fact he was not able to care for them on his own, the evidence is clear that Father's lifestyle did not permit him to be a primary caregiver for the girls. This factor weighs in favor of the trial court's finding that termination was in Bea's best interest.

18

### c.    Parenting abilities

There is no evidence in the record of Father's parenting abilities. Given the girls' young age and the fact that Father was no longer living with them at the time of removal, it is unknown whether Father possesses the parenting abilities or resources to care for Bea. In addition, Father did not participate in the parenting class as required by the services plan. This factor weighs in favor of the trial court's finding that termination was in Bea's best interest.

### d.    Endangerment

We have already concluded that Father's pattern of conduct did not endanger the girls such that termination of his parental rights was appropriate. Father argues there was no conduct at trial establishing that he had acted aggressively or violently toward the girls, negligently supervised the girls, or knowingly exposed them to danger. We agree there was very little evidence developed in the record suggesting that Father had endangered the girls or engaged in conduct that endangered the girls. This factor weighs against the trial court's finding that termination was in Bea's best interest.

### e.    Father's services plan

Evidence that Father did not comply with the services plan for reunification with Bea supports the trial court's best-interest determination. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2012). Father complied with very few of the plan requirements, and the CPS supervisor testified that Father was very difficult to deal with and argumentative. Father was unable to show any stable employment or housing. He refused to comply with the drug and alcohol testing required by the plan. He missed several visits with the girls and did not appear at trial. Father's lack of interest or inability to prioritize services required for reunification weighs

19

in favor of the trial court's finding that termination was in Bea's best interest.

### f. Current placement of the child

Father points out there is little evidence in the record supporting the conclusion that Mother's cousin presented a stable and appropriate environment for the girls. Although Father points out that the evidence was largely "conclusory and without explanation or detail," Father ignores the clear-and-convincing evidence received at trial. None of the witnesses at trial had personally observed the girls with Mother's cousin. However, their opinions were based on two different visits and evaluations; one by a CPS caseworker and another by a Child Advocates volunteer, both of whom observed the girls interact with Mother's cousin. Mother's cousin was interested in raising the girls and adopting them. There was strong, undisputed evidence that Mother's cousin offered stability and permanency. She had reached out at the beginning of the case and expressed interest in adopting the girls. Mother's cousin had completed her home study and was working with the Department in all aspects. Mother's cousin had also previously adopted another child and raised that child to adulthood.

This factor weighs in favor of the trial court's finding that termination was in Bea's best interest.

### g. Analysis

The evidence at trial supports the trial court's finding that termination of Father's parental rights is in Bea's best interest, including the evidence of the stability and permanency of a placement with Mother's cousin, Father's lack of participation in the services plan, and the comparative dearth of evidence regarding Father's resources and plans for taking care of Bea. *See In re L.M.*, 572 S.W.3d 823, 838 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("[T]he trial court

reasonably could have formed a firm belief or conviction that terminating Father's parental rights was in the child's best interest so that she could promptly achieve permanency through adoption."). At the time of removal, Father did not have the resources or ability to care for the girls and there was no evidence offered at trial suggesting this factor had materially changed for Father. We also consider that Father did not attend the trial and offered no excuse.

Our review of the *Holley* factors indicates the trial court's finding by clear-and-convincing evidence that termination of Father's parental rights is in Bea's best interest is supported by legally- and factually-sufficient evidence, and accordingly we overrule issue two. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *Holley*, 544 S.W.2d at 371–72.

We overrule issue two.

### III. CONCLUSION

We reverse the portion of the final order of the trial court with respect to the findings on the predicate grounds of endangerment pursuant to subsection D and E and render the judgment the trial court should have rendered, with the result that we strike subsection D and E findings.

We affirm the remaining portion of the final order as challenged on appeal.


/s/     Charles A. Spain
          Justice


Panel consists of Justices Wise, Bourliot, and Spain (Spain, J., majority).

21